MURPHY, Judge.
 

 *129
 
 Timothy Frederick Leonard ("Defendant") was convicted of voluntary manslaughter in
 
 *659
 
 the death of his wife, Danielle Rae Newell ("Newell"), and received an active sentence on 23 September 2016. He appeals his sentence contending that the trial court failed to find extraordinary mitigating circumstances during his sentencing hearing due to an erroneous view of North Carolina law. After careful review, we find that the trial court accurately understood the law and properly exercised its discretion. Thus, we affirm Defendant's active sentence.
 

 BACKGROUND
 

 Newell and Defendant met each other in 1991 and were married about a decade later. They were "two peas in a pod" and "loved each other very much." Neither spouse was in any way violent or abusive to the other prior to Newell's death. Newell suffered from migraine
 
 *130
 
 headaches for her entire life, but in 2005 they became more frequent and severe; she was experiencing debilitating migraines on a daily basis. Her migraines were sometimes triggered and exacerbated by light, sound, or other stimuli, so she often remained in bed, in darkness, wearing noise cancelling headphones. She lost the ability to work, drive, leave the house, and socialize. Newell tried a number of treatments and medications for her migraines which carried serious side effects, but none were able to stop or alleviate her migraines. During this time, Defendant was Newell's primary caretaker, and in 2015, Newell was determined to be totally disabled.
 

 For many years, Defendant and Newell lived together at a house on Lake Norman owned by a friend. However, in 2015, the friend sold the Lake Norman house, and they had to move. Defendant and Newell found a house in Charlotte located in the "NODA" neighborhood. Shortly after moving there, it became apparent that the new setting was exacerbating Newell's migraines. Neighbors ran a noisy gas generator at all times, the house did not have working heating for several days, and neighborhood dogs barked frequently.
 

 Then, in December 2015, Newell became so distressed that she repeatedly smashed her forehead into a doorjamb. She told Defendant that if he did not help her commit suicide she would do it without him. Prior to this event, Newell had expressed some intent to commit suicide. For example, she had discussed being drowned in a tub at the Lake Norman house. In 2013, Newell became so depressed and suicidal that Defendant and Newell's mother had her involuntarily committed at Presbyterian Hospital. While Newell did not fear death, she worried that if she attempted suicide by herself she might only end up in a vegetative state. Defendant was "exhausted" and "couldn't do it anymore," and it was at this point he agreed to help Newell end her life.
 

 The couple rented a hotel room in Cornelius for the night of 8 December 2015 and went to a hardware store, where they bought a rubber hose and duct tape. Defendant was uncertain in his ability to follow through with the plan, so he went to a restaurant near the hotel and drank a great deal of alcohol. While Defendant was drinking, Newell was at the hotel writing notes to her friends and family. After getting angry at Defendant for not helping her kill herself, she drank a full bottle of Ambien, which left her unconscious for about 24 hours. When she came to, she and Defendant agreed to carry out the plan. Defendant then bound Newell's wrists and ankles with duct tape and drowned her in the hotel room's bathtub. He immediately drove back to the Charlotte house
 
 *131
 
 and attempted to commit suicide by rerouting his vehicle's exhaust into the passenger compartment with a rubber hose.
 

 After his suicide attempt, Defendant was hospitalized in Kings Mountain, where he told the police what happened at the hotel. Defendant was then held in detention for nearly seven months before being put on pre-trial release. Upon release he moved in with Newell's mother in Asheville.
 

 Defendant was initially charged with first degree murder, but he pleaded guilty to the lesser included charge of voluntary manslaughter in violation of N.C.G.S. § 14-18. Defendant's plea agreement provided that:
 

 The [D]efendant shall plead guilty to voluntary manslaughter and the State proposes a sentence of 51-74 months active. The State's position is that the defendant may argue for and the Court in its discretion may impose an intermediate sentence pursuant
 
 *660
 
 to the Extraordinary Mitigation statute ( N.C.G.S. 15A-1340.13 ).
 

 Defendant's Sentence
 

 The legislature has promulgated a sentencing grid which requires an active sentence for voluntary manslaughter unless there is a finding of extraordinary mitigating circumstances in accordance with N.C.G.S. § 15A-1340.13(g). During his sentencing hearing, Defendant requested that the trial court find extraordinary mitigating circumstances. He presented evidence, including testimony from a forensic psychiatrist and from Newell's mother, who stated that she did not feel that it was appropriate to imprison Defendant. Letters from Newell's other relatives were also submitted, which tended to show that Defendant and Newell were under severe distress and the killing of Newell was "an act of love."
 

 In its judgment, the trial court found ten of the mitigating factors described in N.C.G.S. § 15A-1340.16(e). They also found that two non-statutory mitigating factors were present: (1) "Defendant had no history of violent behavior;" and (2) "Defendant has the full support of members of the decedent's family, none of whom wish to see him incarcerated." The State presented no evidence and no aggravating factors were found. However, the trial court did not find that any of the mitigating factors rose to the quality of an extraordinary mitigating factor. Accordingly, it found no extraordinary mitigation and ordered an active sentence of 38 to 58 months, which is the shortest sentence possible within the statutory mitigated range. Defendant gave notice of appeal in open court.
 

 *132
 

 ANALYSIS
 

 Sentencing decisions, including the trial court's failure to find extraordinary mitigating circumstances, are reviewed under an abuse of discretion standard.
 
 State v. Williams
 
 ,
 
 227 N.C. App. 209
 
 , 218,
 
 741 S.E.2d 486
 
 , 491 (2013). Thus, the finding of the trial court may only be overturned if it is "manifestly unsupported by reason" or "so arbitrary that it could not have been the result of a reasoned decision."
 
 Id
 
 . at 218,
 
 741 S.E.2d at 491
 
 .
 

 Voluntary Manslaughter is a Class D felony. N.C.G.S. § 14-18 (2017). As such, it entails a mandatory active sentence, even for an offender such as the Defendant with no prior criminal record in the mitigated range. N.C.G.S. § 15A-1340.17 (2017). When an active sentence is required, the trial court may only order an intermediate sentence if (1) extraordinary mitigating factors exist, (2) the mitigating factors substantially outweigh any aggravating factors, and (3)"[i]t would be a manifest injustice to impose an active punishment." N.C.G.S. § 15A-1340.13(g) (2017) (Dispositional Deviation for Extraordinary Mitigation). Merely finding a large number of statutory mitigating factors is not sufficient.
 
 State v. Melvin
 
 ,
 
 188 N.C. App. 827
 
 , 831,
 
 656 S.E.2d 701
 
 , 703 (2008). Rather, "[t]he trial court must look to the quality and nature of the factor to determine whether it is an extraordinary factor in mitigation."
 
 Id
 
 .
 

 Defendant pleaded guilty to voluntary manslaughter, a crime requiring a mandatory active sentence unless the trial court finds extraordinary mitigation. On appeal, he argues that the trial court acted under an erroneous belief that it did not have discretion to consider a mitigating factor extraordinary if that factor was one of the factors enumerated in N.C.G.S. § 15A-1340.16(e). In other words, because a victim's "consent" to the crime is listed in the mitigation statute, the trial court believed that Newell's consent to her own death by drowning, regardless of its significance, could never be considered an extraordinary mitigating factor.
 

 While it is undisputed that a number of mitigating factors existed and that no aggravating factors did, the sentencing hearing transcript makes plain that the trial court understood the extraordinary mitigation statute and exercised proper discretion within its confines.
 
 See
 
 N.C.G.S. § 15A-1340.13(g) (2017).
 

 An extraordinary mitigating factor is defined to be of a kind
 
 significantly greater than in a normal case
 
 , not the quantity, again, but in terms of merit. In this case, the statutory mitigating factors and the non-statutory mitigating factors are contemplated by the statute. Therefore, I think
 
 *133
 
 it's difficult to know the basis for the significant,
 
 greater than in a normal case
 
 , are present in a normal case. The mitigating
 
 *661
 
 factors outweigh any factors in aggravation, so with regard to the first prong on the test I can't find that they are significantly
 
 greater than are present in a normal case
 
 .
 

 Defendant's brief cites this portion of the transcript to support his argument that the trial court misunderstood the law. His argument, however, overlooks several legally accurate statements made by the trial court about extraordinary mitigation. On multiple occasions, the trial court described an extraordinary factor as one "greater than in a normal case." Additionally, the trial court correctly stated that "[t]he quality of the factors, not the quantity, is the prime consideration of the Court." These statements by the trial court convey exactly what the law says: the consent and participation of the victim, or the support of one's family, can only be an extraordinary mitigating factor if its quality and nature is substantially greater than the normal case.
 

 CONCLUSION
 

 The law gives the trial court broad discretion to determine whether extraordinary mitigating factors exist. While we recognize that a number of mitigating factors were present here, we conclude that the trial court correctly understood the law and applied it reasonably to the unusual and tragic facts of this case. Therefore, the trial court's determination that none of those factors were extraordinary was an appropriate exercise of its discretion. Accordingly, we find no error and affirm the judgment.
 

 AFFIRMED.
 

 Judges CALABRIA and ZACHARY concur.